BENJAMIN LANCY *vs.* CITY OF BOSTON & others.

Suffolk.    January 27, 1904. — June 21, 1904.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & BRALEY, JJ.

*Constitutional Law.  Statute,* Construction.  *Tax,* Exemption, Sale.

St. 1896, c. 321, authorizing the commissioners appointed under St. 1890, c. 428, on a petition for the alteration of the grade crossings of the railroad of the Old Colony Railroad Company on Tremont Street in Boston, to prescribe the manner in which other grade crossings on the Providence division of the New York, New Haven and Hartford Railroad Company in Boston should be abolished, is not unconstitutional as an attempt of the legislative department to interfere in judicial proceedings, but merely gave the commissioners additional powers to be exercised under the direction of the court.

St. 1896, c. 321, authorized commissioners, previously appointed, to prescribe the manner in which certain grade crossings shall be abolished, and "to consider whether public necessity and convenience require any additional land to be taken for railroad and highway purposes in connection with the abolition of such crossings, and if so to prescribe the limits within which the same may be taken" and further provided that the acceptance of the supplemental report of the commissioners "shall be a taking of the land required to be taken for railroad and highway purposes, as therein specified." *Held,* that this gave the Superior Court authority in accepting the report of the commissioners to take the additional land required for the erection of a passenger station outside of the location of the railroad as designated in the report.

Land taken under the right of eminent domain for a highway or for railroad purposes is not taxable to the owner of the fee.

Land taken for a highway and for railroad purposes by a decree of the Superior

Court accepting a report of commissioners under the provisions of St. 1896, c. 321, authorizing the abolition of certain grade crossings, cannot be taxed to the former owners although a copy of the decree is not filed in the registry of deeds until after the first of May when the tax is assessed.

A parcel of land was sold for taxes assessed upon the whole parcel. Before the assessment, by proceedings under a grade crossing act a part of the land had been taken for a highway and was exempt from taxation and another part had been taken for railroad purposes but was outside of the railroad location and was taxable to the railroad company. A third part still belonged to the owners from whom the other parts had been taken and to whom the whole parcel was assessed. *Held,* that the sale was void, as no part of the land was subject to a lien for the collection of one undivided tax on the three portions.

KNOWLTON, C. J.   This case comes before us on a report from the court of land registration.   The question is as to the validity of the title of the petitioner to a tract of land, a part of which was taken for a public street and a part for a railroad station of the New York, New Haven and Hartford Railroad Company, in connection with the abolition of grade crossings on the line of the railroad.   The taking in each case was under the St. 1896, c. 321, and the first question raised is whether this statute is constitutional.

The petitioner contends that because the statute purports to authorize commissioners appointed by the Superior Court upon a petition for the abolition of the grade crossings of the Old Colony Railroad on Tremont Street in Boston, to prescribe the manner in which the other grade crossings on the Providence division of the New York, New Haven and Hartford Railroad Company in the city of Boston shall be abolished, it is unconstitutional, as an attempt of the legislative department to interfere in judicial proceedings.   But this was not an attempt to interfere with judicial proceedings.   The act simply gave the commissioners additional powers, to be exercised under the direction of the court, first, in reference to taking additional land for railroad or highway purposes, and secondly in reference to prescribing the manner of abolishing other grade crossings on another part of the railroad which was not included in the proceedings then pending.   All the parties interested in the new proceedings authorized were then presumably before the court — if not they voluntarily came before the court — and there was nothing improper in the action of the commissioners, under the statute, without the filing of a new petition.   They made a supplemental

report in regard to the additional crossings and the taking of land, in accordance with the requirement of the statute. The action of the commissioners, and the action of the court upon the filing of their supplemental report, were a part of the judicial proceedings, and there is no valid objection to the statute or to these proceedings under it. *Mayor & Aldermen of Northampton, petitioners,* 158 Mass. 299. *Providence, Fall River & Newport Steamboat Co.* v. *Fall River,* 183 Mass. 535. *New London Northern Railroad* v. *Boston & Albany Railroad,* 102 Mass. 386. The St. 1890, c. 428, to which this is an addition, has been held constitutional. *Selectmen of Norwood* v. *New York & New England Railroad,* 161 Mass. 259. *Gately* v. *Old Colony Railroad,* 171 Mass. 494.

Land was taken for a public way in connection with the abolition of the crossing, and other land was taken outside of the location of the railroad five rods in width, for the construction of a new station required by public convenience and necessity in consequence of the abolition of the grade crossing. Upon the record before us, it does not plainly appear whether the land taken for highway purposes was for such a change as could be made, and as would require the taking of land, under the St. 1890, c. 428, and it is at least a grave question whether, under that statute, land could be taken for the erection of a passenger station outside of the location. The respondents in the present case find authority for the taking in that part of the St. 1896, c. 321, which authorizes the commissioners " to consider whether public necessity and convenience require any additional land to be taken for railroad or highway purposes in connection with the abolition of such crossings, and if so to prescribe the limits within which the same may be taken." The crossings referred to in this sentence are those which the commissioners had been authorized previously to consider and report upon. That the authority was ample to warrant the taking of lands in the abolition of these crossings is unquestioned. Whether the further provisions, giving the commissioners authority to prescribe the manner in which other grade crossings should be abolished, gave the court power, on their report, to take additional land for railroad or highway purposes, in connection with the proposed changes in these other crossings, is a question not free from diffi-

culty. All parties before the court, as well as the commissioners themselves, seem to have assumed that they did. The Superior Court, by its decree confirming the report, so decided. On the whole, in view of the fact that the recommendations in regard to the additional crossings and the taking of the additional land were to be embodied in one supplemental report with a provision that "The acceptance of such supplemental report . . . shall be a taking of the land required to be taken for railroad and highway purposes," we are inclined to hold that the right to take additional land was, by implication, imported into the authority to prescribe the manner in which the other crossings should be abolished, and that the taking for the way and for the construction of the station was legal.

The report was accepted by a decree of the Superior Court on April 24, 1897. By the express terms of the statute this acceptance was a taking of the land which changed the title. By the St. 1890, c. 428, § 4, the clerk of the Superior Court was required to cause a copy of the decree to be filed with the commissioners and to be recorded in the registry of deeds for the county. The fact that it was not recorded until June 23, 1897, does not affect the rights of the parties. *Sykes* v. *Keating*, 118 Mass. 517, 519. *Orne* v. *Barstow*, 175 Mass. 193, 196. *Goff* v. *Britton*, 182 Mass. 293, 294.

The petitioner's title is under a sale for taxes assessed to the former owners on May 1, 1897, and we must consider the effect of such a tax upon the rights of the public and of the railroad company, previously acquired. Each of the titles created by the taking was only an easement, and the fee remained in the former owners. But the easement in each case gave paramount and practically exclusive rights in the land taken. An appropriation of land to the use of the public for a highway under the right of eminent domain creates an interest in the public which cannot be affected by a subsequent attempt to tax the land to the owner of the fee. The various provisions as to taxation of real estate and the collection of taxes are inapplicable to property held for such a public use. It has often been decided that lands appropriated to such uses are exempt from taxation. *Wayland* v. *County Commissioners*, 4 Gray, 500. *Essex County* v. *Salem*, 153 Mass. 141. *Worcester County* v. *Mayor & Aldermen*

*of Worcester,* 116 Mass. 193. *Somerville* v. *Waltham,* 170 Mass. 160. *Boston* v. *Boston & Albany Railroad,* 170 Mass. 95, and cases there cited. *Miller* v. *Fitchburg,* 180 Mass. 32. These cases refer particularly to taxation of those who hold the title for the benefit of the public. We are not aware that there has ever been an attempt to tax the fee held by an owner of land which was taken and used for a highway or railroad, or that the court has in terms decided that the interest of the owner of the fee in such a case is exempt from taxation. But the implication from the cases is to that effect, and we are of opinion that when an easement in land taken for a public use involves practically the exclusive possession and control of the property by the public, and leaves the original owner with no right of substantial value, the property is exempt from taxation, although he remains the owner of the fee. It follows that the tax assessed to the Whittemores on May 1, 1897, upon that part of the land which had been taken for a public way, was invalid, and the petitioner by his purchase acquired no title to the property. *Mackall* v. *Chesapeake & Ohio Canal Co.* 94 U. S. 308. *Rich* v. *Braxton,* 158 U. S. 375. The fact that the Whittemores remained the owners of record did not affect the rights of the public or of the railroad company after a valid taking, and it gave the assessors no right to tax land devoted to such public uses.

The small portion of the land which was not included either in the taking for a public way or in that for railroad purposes was taxable to the Whittemores as owners, and under the R. L. c. 111, § 96, the land taken for railroad purposes being outside the location of the railroad five rods in width was taxable to the corporation. Each of the three parts into which the land was divided by the taking of portions for these different uses stood in a different relation to the law in regard to taxation. The six hundred and twenty-five feet which was left to the owners could be taxed in the ordinary way, and as that part of the tax was rightfully assessed, the owners, if an action at law had been brought against them for the collection of the whole tax, or if they had paid it under protest and brought an action to recover back the part improperly assessed, would have been without remedy, inasmuch as they had not applied for an abatement. *Howe* v. *Boston,* 7 Cush. 273. *Bourne* v. *Boston,* 2 Gray, 494. *Salmond* v. *Han-*

*over,* 13 Allen, 119.    But none of the land was subject to a lien which could be enforced by a sale for any other tax than that which was lawfully assessed upon it.    *Hayden* v. *Foster,* 13 Pick. 492.

The sale was of the whole land for a single undivided tax upon the three portions.    No part of the land was subject to a lien for that tax, and the sale was therefore illegal and void. The result is that the petitioner took no title, and his petition must be

*Dismissed.*

*W. O. Childs,* for the petitioner.

*P. Nichols,* for the city of Boston.

*C. F. Choate, Jr.,* for the railroad companies.